# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | | |
|---|---|---|
| JOHN M. LONGORIA,<br>TDCJ # 01878423, | §<br>§<br>§ | |
| Plaintiff, | §<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 3:19-0086 |
| BRYAN COLLIER, *et al.*, | §<br>§ | |
| Defendants. | §<br>§ | |

## MEMORANDUM OPINION AND ORDER

Plaintiff John M. Longoria is incarcerated in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"). On February 28, 2019, Plaintiff filed a *pro se* civil rights complaint alleging that prison officials denied him adequate medical care (Dkt. 1). Plaintiff has paid the Court's filing fee. Because Longoria is a prisoner seeking redress from government officials, the Court is required by the Prison Litigation Reform Act ("PLRA") to scrutinize the pleadings. 28 U.S.C. § 1915A(a). The Court must dismiss the case, in whole or in part, if it determines that the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). After reviewing Plaintiff's complaint (Dkt. 1), more definite statement (Dkt. 4), and supplemental more definite statement (Dkt. 7), and having considered the applicable law, the Court concludes that Plaintiff's claims against Defendants Owusu, Collier, Jones, and Matthews must be **DISMISSED** for the reasons that follow.

Plaintiff's claims against Defendant Isabel will be **TRANSFERRED** to the Houston Division of the Southern District of Texas.

I.  **BACKGROUND**

In March and April 2018, while incarcerated at the Ferguson Unit in Madison County, Plaintiff sought treatment for symptoms including pain and swelling in his leg, a dry hacking cough, and chest pain (Dkt. 1, at 4).[1] He alleges that Nurse Isabel, who is named as a Defendant in this action, failed to recognize his potentially fatal condition and his need for immediate treatment. In particular, he alleges that on March 30 and April 16, 2018, Isabel gave him non-aspirin and instructed him to return to his cell, refusing him additional treatment (*id*. at 4, 6; Dkt. 4, at 13).

On April 16, 2018, after Plaintiff allegedly had complained about his symptoms "for 16 day[s] straight," a major at the Ferguson Unit called 911 and arranged for Plaintiff's emergency transport to a hospital in Huntsville (*id*.). Longoria later was transferred to Hospital Galveston and had emergency surgery for blood clots to the lungs, or pulmonary embolism. *See* Dkt. 1-1, at 5 (discharge summary dated April 30, 2018). He states that his pulmonary embolism was caused by untreated and undiagnosed deep vein thrombosis. He alleges that, as a result of Isabel's failure to provide adequate treatment from March 30 through April 16, he suffered pain in his leg, swelling, lack of

---

[1] Throughout this Memorandum, the Court's citations to specific pages in the record refer to the pagination on the Court's electronic case filing ("ECF") system.

oxygen in his lungs, and emotional trauma (Dkt. 4, at 15).[2]

In May 2018, shortly after his discharge, Longoria was transferred to the Terrell Unit in Brazoria County. Longoria alleges in his pleadings that he has been "untreated" since his discharge in April 2018, stating that he "remains in URGENT need of corrective/preventative procedures/surgery for Pulmonary Thrombo-embolism and emergency intervention for blood clot migration to his lungs and is at imm[i]nent risk of sudden death" (Dkt. 1, at 6). *See* Dkt. 4, at 10 ("Since April 2018 to present, no treatment has been ordered that I know of"); *id*. at 6 ("I receive no treatment to help medical issues"). However, Plaintiff also acknowledges that he takes Warfarin, a blood thinner, for his condition and has had multiple medical appointments since his discharge. *See id*. at 5-6 (referencing Warfarin and follow up care on October 25 and November 15, 2018); *id*. at 25-31 (I-60 forms furnished by Plaintiff reflect medical appointments in May 2018, June 2018, and March 2019); Dkt. 1-1, at 4 (grievance response furnished by Plaintiff references medical appointment on September 7, 2018).[3] Moreover, in response

---

[2] Plaintiff filed a grievance about the events at the Ferguson Unit in July 2018, while at the Terrell Unit (Dkt. 1-1, at 1-4) (Grievance No. 2018168167). At step one, the grievance response was signed by Austee Matthews, whom Plaintiff names as a defendant in this action. *See id*. at 2 (Matthews states, "I have investigated this request. You have been seen and evaluated in medical on several occasion[s] for your condition. Treatment and medication decisions are the purview of the licensed medical provider and are not based on patient request. Access to care was appropriately provided"). The grievance also was denied at step two (*id*. at 4).

[3] The documents attached by Plaintiff also indicate that he was counseled for noncompliance with medication on July 12, 2018, and failed to show for medical appointments on August 22, September 25, and October 16, 2018. *See* Dkt. 1-1, at 4 (step two administrative response to Grievance No. 2018168167). In his more definite statement, Plaintiff states that he "strongly" disagrees that he failed to show for appointments and that at the Terrell Unit "they kick you out of line" (Dkt. 4, at 11). In response to the Court's instruction that he explain what happened on each of the listed dates, Plaintiff explains that he was not compliant with his medication on July 12, 2018, because "medication staff will close pill windows for long periods

to this Court's questions, Plaintiff clarified that new blood clots have not formed since his April 2018 discharge.

Plaintiff brings claims against Kwabena Owusu, M.D., a physician at the Terrell Unit, for failure "to properly identify and treat" his pulmonary embolism and deep vein thrombosis and for failure to transfer him to the hospital. *See* Dkt. 1, at 5 (Owusu did not "transfer Plaintiff to a hospital when Plaintiff had a medical condition that any provider should be able to recognize" with symptoms of painful, swollen leg, dry cough, and chest pain). Despite the Court's request, Plaintiff has provided no dates or other specific information regarding his complaint that Dr. Owusu denied him medical care. *See* Dkt. 4, at 17-18 (in response to Court's question about when Owusu failed to provide adequate treatment or what treatment was necessary at the time, Plaintiff stated that he is "still in need of treatment to resolve[] my medical problem the clot and the abnormal size leg and an open wound" and referred the Court to "medical records").

Plaintiff also alleges that Dr. Owusu improperly denied him medical restrictions on his prison work assignments. *See id.* at 17 (alleging that Dr. Owusu "put the medical issue off" and forced Plaintiff to work and stand on his leg); *id.* at 18 (alleging that Owusu "only gave [him] 3 times a 30 day work restriction"). In response to the Court's questions, Plaintiff identified the dates of Owusu's denials as May 22, 2018 and January 7, 2019. *See* Dkt. 7, at 2. He refers the Court to his medical restrictions list which reflects that, on both dates listed by Plaintiff, Dr. Owusu authorized a four-hour work

---

of time while we stand and wait" and he is incapable of standing on his leg for an hour and a half (*id.*). He provides no explanation regarding his failure to appear for appointments on August 22, September 25, and October 16, 2018 (*id.*).

restriction for Plaintiff (Dkt. 4, at 24). Plaintiff therefore appears to complain that Dr. Owusu issued a four-hour restriction rather than the "medically unassigned" status Plaintiff requested (Dkt 7, at 3). He failed to respond directly to the Court's instruction to identify any specific physical harm that resulted from Dr. Owusu's decision to order a four-hour work restriction for the two relevant periods.[4] The Court notes that, based on the documents submitted by Plaintiff, Dr. Owusu had authorized medically unassigned status at other times since Plaintiff's hospital discharge, and other medical personnel at the Terrell Unit issued a medical unassignment to Plaintiff as recently as April 2019.[5]

Plaintiff brings claims against Dr. Jones, the medical director at the Terrell Unit, for failure to provide adequate treatment alleging that she "is the head provider she should [have] known as she reviews all patients' medical problems . . . and she didn't do anything medical wise" (Dkt. 4, at 15). He states that Jones should have referred him "to a professional doctor of internal medicine" (*id*. at 17). Despite the Court's request, he did

---

[4] When asked to describe "any physical harm or medical symptoms during this period as a result of Dr. Owusu's denial of your medical restriction," and to provide relevant dates, Plaintiff responded that his leg is "physically enlarged" with "abnormal sores" and pus, that his sores "can cause amputation," and that he is "in NEED of [a] medical specialist expert in field of vein di[sease] and diabetic treatment" (Dkt. 7, at 4). As for dates, Plaintiff stated only, "March 2018 to present see medical file on unit. Being denied medical. Please send court personnel to document medical damages to my leg!!" (*id*.).

[5] A list of medical restrictions, dated March 1, 2019, indicates that Dr. Mbugua authorized work restrictions for Plaintiff on May 7, 2018 (no repetitive squatting, no walking more than 300 yards, limited standing, no climbing); that Dr. Owusu assigned him to sedentary work with a four-hour work restriction from May 22, 2018, through August 20, 2018; that he was medically unassigned on Dr. Owusu's orders from July 12 through August 11, 2018; that he was medically unassigned on Dr. Owusu's orders from September 7, 2018 through December 6, 2018; that he was restricted to four hours of work on Dr. Owusu's orders from January 7 through July 6, 2019; and that he was medically unassigned on Dr. Nwafor's orders from March 1 through March 30, 2019 (Dkt. 4, at 24). Dr. Mbugua authorized a 90-day medical unassignment on April 18, 2019 (Dkt. 8-1, at 1).

not provide a date or approximate date on which Jones allegedly denied him treatment (*id*. at 15).

Plaintiff alleges that Bryan Collier is liable for his claims regarding denial of medical care because, as director of TDCJ, he has "legal authority" (*id*. at 13). Plaintiff alleges no personal involvement by Collier.

On May 6, 2019, approximately one week after filing his supplemental more definite statement, Longoria filed a request for a temporary restraining order (Dkt. 8). Plaintiff alleges that, on May 1, 2019, Dr. Jones laid him in for a medical appointment "then took [his] medical unassigned restriction without reason" (*id*. at 1). *See* Dkt. 8-1, at 6 ("job change" slip dated May 1, 2019 states that Longoria is assigned to the cannery). Plaintiff states, "[t]his is the 4th to 5th time medical unassigned restriction was issued by medical staff," and alleges "Direct Retaliation" by Dr. Jones (Dkt. 8, at 1). He does not provide any information about what allegedly motivated Jones to retaliate against him.[6] He seeks relief in the form of a court order directing Terrell Unit officials to stop denying him medically unassigned status pending resolution of his case (Dkt. 8, at 2).

B. **LEGAL STANDARDS**

As required by the PLRA, the Court screens this case to determine whether the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b). A district court may dismiss a complaint as frivolous "if it lacks an arguable

---

[6] Plaintiff refers to the Court to the medical evidence he attaches to his motion, but the attached evidence is from April 2018, more than a year before Dr. Jones' alleged action. *See* Dkt. 8-1, at 2-5).

basis in law or fact." *Geiger v. Jowers,* 404 F.3d 371, 373 (5th Cir. 2005); *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory. . . . A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (internal quotation marks and citation omitted).

A dismissal for failure to state a claim is governed by the same standard as a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Newsome v. EEOC,* 301 F.3d 227, 231 (5th Cir. 2002). Under this standard, the Court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true," and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (internal citations and quotation marks omitted).

In reviewing the pleadings, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *Geiger*, 404 F.3d at 373.

C. **ANALYSIS**

    A. **Official Immunity**

The defendants were, at all relevant times, TDCJ or University of Texas Medical Branch ("UTMB") officials. A claim against a state employee in his or her official capacity is a claim against the State of Texas. *See Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 604 (5th Cir. 2008). Because the Eleventh Amendment protects the states' sovereign immunity, federal courts lack jurisdiction over suits against a state for money damages unless the state has waived its immunity or Congress has clearly abrogated that immunity. *NiGen Biotech, L.L.C., v. Paxton*, 804 F.3d 389, 393–94 (5th Cir. 2015); *Moore v. La. Bd. Of Elem. And Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). Texas has not waived its Eleventh Amendment immunity, and Congress did not abrogate that immunity when enacting Section 1983. *NiGen*, 804 F.3d at 394.

Plaintiff seeks nominal, compensatory, and punitive damages. To the extent he brings any claims for money damages against Defendants in their official capacities, the state is immune under the Eleventh Amendment. The claims therefore will be dismissed for lack of jurisdiction.

### B. Plaintiff's Claims for Relief

Plaintiff brings claims under the Eighth Amendment to the Constitution. Under federal statute, 42 U.S.C. § 1983, a plaintiff may bring a civil rights claim against a person "acting under color of state law," such as a state prison official, for a constitutional violation. *See Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016); *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002).

#### 1. Nurse Isabel

Plaintiff alleges that Nurse Isabel ignored his medical complaints for sixteen days, from March 30 through April 16, 2018, at which time a major arranged for Plaintiff's emergency medical transport. He claims that Isabel denied him adequate medical care in violation of the Eighth Amendment. Isabel works as a nurse at the Ferguson Unit and all of Plaintiff's allegations against her pertain to events in March and April 2018, when he was incarcerated at the Ferguson Unit. The Ferguson Unit is in Madison County, which is located within the Southern District of Texas, Houston Division. *See* 28 U.S.C. § 124(b)(2).

Neither Isabel nor the alleged civil rights violations at the Ferguson Unit have the requisite connection to the Southern District of Texas, Galveston Division. *See* 28 U.S.C. § 1391(b); *Mayfield v. Klevenhagen*, 941 F.2d 346, 348 (5th Cir. 1991). A district court has the authority to transfer a case in the interest of justice to another district or division in which the action might have been brought. *See* 28 U.S.C. § 1404(a), § 1406(a). In particular, Section 1404 authorizes a transfer based on considerations of convenience:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought . . .

28 U.S.C. § 1404(a). A district court has "broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1999).

In the interest of justice, and for the convenience of the parties and witnesses, the Court concludes that Plaintiff's claims against Isabel should be **transferred** to the Southern District of Texas, Houston Division. *See* 28 U.S.C. § 1391(b); 28 U.S.C. § 1404(a).

### 2. Dr. Owusu

#### a. Denial of Medical Care

Plaintiff alleges that Dr. Owusu failed to provide him with adequate medical treatment at the Terrell Unit after his hospital discharge on April 30, 2018. Because Plaintiff was, at all relevant times, a convicted felon in state prison, his claims regarding medical care are governed by the Eighth Amendment. To state a claim under the Eighth Amendment, a plaintiff must demonstrate that the defendant exhibited "deliberate indifference" to his "serious medical needs, constituting an unnecessary and wanton infliction of pain." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (internal citations and quotation marks omitted); *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prisoner must show "objective exposure to a substantial risk of serious harm." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). He also must show that the defendant acted, or failed to act, with deliberate indifference to the risk. *Id.* at 345-46. A defendant's personal involvement is an essential element of a civil rights cause of action, meaning

that there must be an affirmative link between the injury and a defendant's conduct. *See Delaughter v. Woodard*, 909 F.3d 130, 136-37 (5th Cir. 2018).

The deliberate indifference standard has both objective and subjective components. The plaintiff must show that: (1) the prison official was aware of facts from which the inference of an excessive risk to the prisoner's health and safety could be drawn; and (2) the official actually drew that inference. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015); *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). Deliberate indifference is an "extremely high standard." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires "more than an allegation of mere negligence, but less than an allegation of purpose or knowledge." *Hinojosa*, 807 F.3d at 665. Even poor professional judgment or medical malpractice do not rise to the level of "deliberate indifference" necessary to show a constitutional violation. *Harris*, 198 F.3d at 159.

Plaintiff alleges that Owusu "failed to properly identify and treat" his pulmonary embolism and deep vein thrombosis and failed to transfer Plaintiff to a hospital. *See* Dkt. 1, at 5 (alleging that Owusu did not "transfer Plaintiff to a hospital when Plaintiff had a medical condition that any provider should be able to recognize" with symptoms of painful, swollen leg, dry cough, and chest pain). He provides no dates for his complaints against Dr. Owusu, despite the Court's instruction to provide dates with as much specificity as possible (Dkt. 4, at 17-18). To the extent Plaintiff relies on his allegations that Dr. Owusu failed to "identify" his condition and transfer him to a hospital, these allegations apparently refer to Plaintiff's symptoms and medical needs at the Ferguson

Unit in April 2018, before his hospitalization and diagnosis. Any allegations regarding the events of April 2018 are irrelevant to an Eighth Amendment claim against Owusu, who did not treat Plaintiff until Plaintiff was transferred to the Terrell Unit in May 2018, after his discharge from the hospital.

Apart from his allegations regarding his need for hospitalization in April 2018, Longoria's allegations of inadequate medical care by Dr. Owusu are cursory and vague. *See*, *e.g.*, Dkt. 4, at 11 ("I don't agree with [their] medical situation or [their] tactics used. If they keep appointments and do more of a professional hospital management of patients then the treatment may become more accessible to patient"). His more definite statement provides no specific allegations regarding a denial of medical care by Owusu, despite the Court's specific questions.[7] Plaintiff attaches medical and administrative records to his pleadings which demonstrate that he received regular medical treatment after his transfer to the Terrell Unit, including medical appointments in May, June, September, October, and November 2018, and in March 2019 (Dkt. 4, at 6, 25-31; Dkt. 1-1, at 4). To the extent Plaintiff contends that he should have received more frequent care or different medical treatment from Dr. Owusu, his claim fails under Eighth Amendment standards because a plaintiff's mere disagreement with the treatment provided is insufficient to

---

[7] In response to the Court's question about the treatment Dr. Owusu allegedly failed to provide, Plaintiff stated, "see medical records/see above answers still in need of treatment to resolve[] my medical problem the clot and the abnormal size leg and a[n] open wound" (Dkt. 4, at 18). He further stated, "All that Dr. Owusu has done is put the medical issue off and made me work and stand on my leg[.] [B]asic[ally] Dr. Owusu did nothin[g] for me and only gave me 3 times a 30 day work restriction as this unit they slave drive you in the cannery, forced labor" (*id.* at 17-18). Plaintiff's allegation that Dr. Owusu violated his rights in connection with Plaintiff's work restrictions is addressed separately below.

state a claim for deliberate indifference. *Estelle*, 429 U.S. at 107; *Brauner v. Coody*, 793 F.3d 493, 499 (5th Cir. 2015).

Plaintiff has not pleaded any specific action or failure to act by Dr. Owusu that exposed Plaintiff to a "substantial risk of serious harm" as required for an Eighth Amendment claim. *See Gobert*, 463 F.3d at 345. He also has failed to allege that Owusu acted, or failed to act, with deliberate indifference to any such a risk to Plaintiff. *Id*. at 345-46. In light of the documentation attached by Plaintiff to his pleadings, coupled with Plaintiff's failure to provide the requested information in his more definite statement, Plaintiff's cursory allegation that Dr. Owusu did "nothing" for him and denied him medical care lacks an arguable basis in fact and must be dismissed. *See Iqbal*, 556 U.S. at 678 (a *pro se* plaintiff must allege more than "labels and conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim on which relief can be granted) (internal quotation marks and citations omitted); *Rogers*, 709 F.3d at 407 (a complaint lacks an arguable basis in fact "if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless"); FED. R. CIV. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief").

Plaintiff's claim against Defendant Owusu for denial of adequate medical care will be dismissed under 28 U.S.C. § 1915A(b).

### b. Denial of Medically Unassigned Status

Plaintiff also alleges that Dr. Owusu violated his rights by denying him medical restrictions for his prison work assignments. In certain circumstances, prison work conditions imposed on an inmate with medical limitations can violate the Eighth Amendment. "If prison officials knowingly put [an inmate] on a work detail which they knew would significantly aggravate his serious physical ailment such a decision would constitute deliberate indifference to serious medical needs." *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). *See Williams v. Henagan*, 595 F.3d 610, 622 n.18 (5th Cir. 2010) ("Prison work conditions may . . . amount to cruel and unusual punishment"); *Douglas v. McCasland*, 194 F. App'x 192 (5th Cir. 2006); *Williams v. Wooten*, 119 F. App'x 625, 626 (5th Cir. 2004). Deliberate indifference is an "extremely high standard." *Domino*, 239 F.3d at 756. It requires "more than an allegation of mere negligence, but less than an allegation of purpose or knowledge." *Hinojosa*, 807 F.3d at 665.

Plaintiff alleges that Dr. Owusu "denied" him medical restrictions on May 22, 2018 and January 7, 2019, and therefore forced Plaintiff to work and stand on his leg (Dkt. 4, at 17). However, according to the documents attached by Plaintiff to his complaint, Dr. Owusu did not deny Longoria a medical restriction on those dates, but rather authorized a restriction to four hours of work (*id*. at 24). Longoria appears to complain that, on those two dates, Dr. Owusu did not authorize a "medically unassigned" work status for him. *See id*. at 17-18 (Dr. Owusu gave Longoria a "30 day work restriction" on "only" three occasions). The Court asked Plaintiff specific questions about the restrictions that he claims were necessary, the dates they were necessary, and

the reasons. Plaintiff did not directly respond to the Court's questions and provided no information specific to the periods beginning May 22, 2018 and January 7, 2019. As for the necessary restrictions, Longoria merely stated that "medically unassigned and standing and sedentary work is just," with the explanation that he has an enlarged, swollen leg and "may" have further clots (Dkt. 7, at 3).

Plaintiff does not allege any facts to support his claim that his medical condition on May 22, 2018 or January 7, 2019 warranted a medical unassignment, as opposed to a four-hour work restriction. Furthermore, Longoria provides no facts indicating that his condition was aggravated by the four-hour work restriction. *See Jackson*, 864 F.2d at 1246. Rather, in response to the Court's instruction to describe the harm he suffered from working a four-hour shift, with relevant dates, Longoria stated that he continues to have sores and swelling in his leg (Dkt. 7, at 4). Finally, he provides no facts supporting a claim that Dr. Owusu knew that the four-hour work restriction would cause a significant aggravation of his condition. See *Jackson*, 864 F.2d at 1246 ("[i]f prison officials knowingly put [an inmate] on a work detail which they knew would significantly aggravate his serious physical ailment such a decision would constitute deliberate indifference to serious medical needs"). To the extent Plaintiff relies upon his disagreement with Dr. Owusu's medical judgment in ordering a four-hour work restriction, this allegation is insufficient under Eighth Amendment standards. *See Estelle*, 429 U.S. at 107; *Brauner*, 793 F.3d at 499.

Plaintiff's cursory allegations against Dr. Owusu regarding his work restrictions fail to state a claim for relief under the Eighth Amendment. *See Iqbal*, 556 U.S. at 678;

*Rogers*, 709 F.3d at 407; FED. R. CIV. P. 8(a)(2). Therefore, his claims will be dismissed under 28 U.S.C. § 1915A(b).

### 4. Other Defendants

Plaintiff alleges that Defendant Collier is liable for the alleged denial of adequate medical care because he is director of TDCJ and therefore has "legal authority" over others (Dkt. 4, at 13). He alleges that Dr. Jones is liable because she "is the head provider she should [have] known as she reviews all patients' medical problems . . . and she didn't do anything medical wise" (*id*. at 15).[8] Plaintiff's more definite statement identifies no personal involvement by either defendant. Because Plaintiff's claims against Collier and Jones are based solely on the fact that these officials exercised supervisory authority over other TDCJ or UTMB officials, his § 1983 claims against them must fail. Absent personal involvement in a constitutional violation, supervisory liability cannot state a claim for relief under § 1983. *See Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011); *Rios v. City of Del Rio, Tex*., 444 F.3d 417, 425 (5th Cir. 2006).

Regarding Matthews, Plaintiff alleges that she failed to properly supervise or investigate the medical providers at the Terrell Unit, causing him "severe physical and emotional distress" (Dkt. 1, at 5). He bases his claim on Matthew's response to his July 2018 grievance, in which Matthews determined after investigation that Plaintiff had been provided appropriate access to care (Dkt. 1-1, at 2). A supervisor may be liable for failure to supervise or train if: "(1) the supervisor either failed to supervise or train the

---

[8]    Plaintiff recently filed a motion for a temporary restraining order against Jones, seeking to bring a new claim of retaliation against her (Dkt. 8). This claim is addressed separately below.

subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris Cnty.,* 571 F.3d 388, 395 (5th Cir. 2009). Plaintiff alleges no facts relevant to a causal link between Matthews' conduct and a violation of Plaintiff's rights, nor to deliberate indifference by Matthews, both of which are required elements of his claim. Moreover, as set forth above regarding Dr. Owusu, Plaintiff has not stated a claim for a violation of his rights by medical personnel at the Terrell Unit, where Matthews works. Plaintiff therefore fails to state a claim against Matthews.[9]

Plaintiff's claims against Collier, Jones, and Matthews will be dismissed for failure to state a claim upon which relief can be granted under 28 U.S.C. § 1915A(b).

### 5. Request for Temporary Restraining Order

Plaintiff filed a motion on May 6, 2019 seeking emergency injunctive relief against Dr. Jones. He alleges that Jones retaliated against him on May 1, 2019 by denying him medically unassigned status "without reason" (Dkt. 8, at 1).

A plaintiff seeking a preliminary injunction must establish "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied

---

[9] To the extent Plaintiff's claim against Matthews should be construed as an allegation that she violated his due process rights by failing to properly investigate his grievance, his claim also fails. *See Stauffer v. Gearhart,* 741 F.3d 574, 587 (5th Cir. 2014) (because prison officials investigated his grievance and provided a written justification for their denial of his grievance, the plaintiff failed to state a due process claim); *Geiger,* 404 F.3d at 373-74 (an inmate does not have a federally protected liberty interest in having grievances resolved to his satisfaction).

outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Jones v. Texas Dep't of Criminal Justice*, 880 F.3d 756, 759 (5th Cir. 2018) (citations omitted). The Fifth Circuit has cautioned that a preliminary injunction "is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Defense Distributed v. U.S. Dep't of State*, 838 F.3d 451, 457 (5th Cir. 2016) (internal quotation marks and citations omitted). To state a valid claim for retaliation in this context, a prisoner must allege: (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018). "To show causation, a plaintiff must allege that but for the retaliatory motive the complained of incident would not have occurred. A plaintiff must either produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred." *Id.* (internal citations, quotation marks, and alteration omitted).

Given that the event in question took place less than one month ago, it appears that Plaintiff has failed to exhaust his administrative remedies. *See* 42 U.S.C. § 1997e(a) (an inmate bringing an action regarding prison conditions under 42 U.S.C. § 1983 or other federal law must first exhaust all administrative remedies "as are available"); *Ross v. Blake*, 136 S. Ct. 1850 (2016); *Jones v. Bock*, 549 U.S. 199, 212 (2007); *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). In any event, Plaintiff is not entitled to injunctive relief on his retaliation claim against Dr. Jones because he has not "clearly carried the burden of persuasion" on the four required elements, including a substantial

likelihood of success on the merits. *See Defense Distributed*, 838 F.3d at 457. Although Plaintiff alleges that Jones retaliated by removing his medically unassigned status, he makes no allegation that Jones intended to retaliate against him for the exercise of a specific constitutional right. He therefore fails to show a "retaliatory adverse act" by Jones. *See Brown*, 911 F.3d at 245; *Easter*, 467 F.3d at 463. To the extent he bases his allegation of retaliation on his personal belief that Jones intended to retaliate against him,[10] such an allegation is insufficient under the case law. *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("The inmate must allege more than his personal belief that he is the victim of retaliation").

Finally, the relief sought by Plaintiff, which is a court order directing Terrell Unit officials to stop denying him medically unassigned status pending resolution of his case (Dkt. 8, at 2) would require court oversight of a doctor's medical judgment. Plaintiff provides no legal basis for such an order, which would be contrary to judicial authority. *See, e.g., Estelle*, 429 U.S. at 107 (explaining that the decision whether to provide a particular type of treatment "is a classic example of a matter for medical judgment").

Because Plaintiff has not clearly carried his burden of persuasion on his retaliation claim, his motion for a temporary restraining order (Dkt. 8) is **DENIED**.

**D.    CONCLUSION**

The Court hereby **ORDERS** as follows:

---

[10]    *See, e.g.*, Dkt. 8, at 1 ("This is the 4th to 5th time medical unassigned restriction was issued by medical staff. This is Direct Retaliation").

1. Plaintiff's claims against Nurse Isabel regarding events at the Ferguson Unit in March and April 2018 will be transferred by separate order to the United States District Court for the Southern District of Texas, Houston Division.

2. Plaintiff's claims against Owusu, Jones, Collier, and Matthews are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief can be granted.

3. Plaintiff's request for a temporary restraining order (Dkt. 8) is **DENIED**.

The Clerk will provide the parties with a copy of this order.

SIGNED at Galveston, Texas, this 24th day of May, 2019.

*George C. Hanks Jr.*
George C. Hanks Jr.
United States District Judge